IN THE UNITED STATES DISTRICT COURT WESTERN DISTRICT OF TENNESSEE

Kevin Cash,

    Plaintiff,

        v.

TURNER HOLDINGS, LLC, A/K/A
PRAIRIE FARMS DAIRY, INC.,

and

Country Trust Bank, A/K/A Country Financial,

    Defendants.

Case Number: 2:17-cv-02611-SHM-tmp

## Response to Country Trust Bank Motion to Dismiss

Comes now Plaintiff, by and through his attorney, and respectfully requests that this Honorable Court deny Defendant Country Trust Bank's Motion to Dismiss, brought pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56.

In opposition to Defendant Country Trust Bank's motion, Plaintiff responds as follows:

**Facts**

Plaintiff incorporates by reference, as if restated verbatim, Plaintiff's Response to Turner Holdings, LLC, Motion to Dismiss.

On July 20, 2017, Plaintiff filed a Complaint against Defendants in Shelby County Tennessee, Circuit Court, which was removed to federal court by Defendant on August 23, 2017. (ECF No. 1). Plaintiff incorporates by reference his Complaint as if restated verbatim.

–1–

(ECF No. 1).

On August 30, 2017, both Defendants filed a Motion to Dismiss in which they incorporated by reference each other's motions. (ECF No. 8-10).

On June 13, 2011, Plaintiff applied for a loan of $4,000, and received it on June 24, 2011. (ECF No. 10, Exhibit E, page 5). Plaintiff promised to repay Defendant Country Trust for the loan, and the loan was secured by Plaintiff's 401(k) which Defendant Turner was the creditor. (ECF No. 10, Exhibit E, page 2).

The total number of scheduled payments was 78, in the amount of $55.53 each payroll period. (ECF No 10, Exhibit E, page 2). In part, the agreement stated:

The borrower is responsible for making certain that the employer is withholding the proper loan payments. If the Borrower determines that a loan payment has not been withheld, the Borrower must notify the employer and arrange for make-up payment(s) before a default occurs. If the Borrower does not make the missed loan payment(s) and a default occurs, the Borrower will be subject to adverse federal tax consequences.

At the option of the HOLDER of this Note, until payment in full or maturity, all monies payable under this Note are due and immediately payable. The Note is in default if any payment remains unpaid beyond the last day of the calendar quarter following the calendar quarter in which the Borrower missed the scheduled payment.

ECF No. 10, Exhibit E, Page 2.

Defendant Turner was the Holder, and Employer of the promissory note, and the loan was between Defendant Country Trust Bank and Plaintiff. (ECF No. 10, Exhibit B, Exhibit E, page 2).

Plaintiff was informed by Defendant Turner that his loan payments were paid in full, prior to June of 2016, by Defendant Turner Ginger Beasley. (This is not included in Complaint). However, in June of 2016, Plaintiff was informed by Defendant Country Trust Bank, that

Plaintiff still owed $1,162.37.  (See Complaint Paragraph 6).   Plaintiff was informed by Defendant Country Trust Bank representative identified as "Bo," that his payments were current, up until December 23, 2013.  (This information was not included in Complaint).  Based on Defendant Country Trust Bank's repayment schedule, as of December 23, 2013, Plaintiff should have been left with an outstanding balance of $711.46, as opposed to $1,162.37.  (ECF No. 10, Exhibit E, page 6).   Defendant Country Trust Bank representative "Bo," also informed Plaintiff that he had 6 payments in 2014 that were not credited, but that Plaintiff made.  (This information was not included in Complaint).  Defendant Country Trust Bank representative "Bo" could not explain to Plaintiff what was happening with his account, and why Plaintiff was not being properly credited.  (This information was not included in Complaint).  In addition, Defendant Country Trust Bank representative "Bo" informed Plaintiff that he could take out another loan, once his current loan was paid off.  (This information was not included in Complaint).  Defendant Country Trust Bank representative "Bo" then stated to Plaintiff that he would contact Defendant Turner to clear up the discrepancies with his account, and when he spoke to Plaintiff again in June of 2016, he informed Plaintiff that in order to receive another loan, Defendant Turner would make that determination, and not Defendant Country Trust Bank.  (This information was not included in Complaint).  Plaintiff was also not in default on his loan, nor was he ever alleged to be in default on his loan.  (This information was not included in Complaint).

In June of 2016, Plaintiff then spoke to Defendant Turner representative David Warmer, who told Plaintiff that he could not have another loan, and that he did not qualify.  (This information was not included in Complaint).  No reason was given to Plaintiff, and the denial

–3–

was not in writing.  (This information is not included in Complaint).  Plaintiff informed Defendant Turner that he was not being treated the same as another employee, Reginald Harris, who was able to get another loan, once he paid off his first loan.  (This information is not included in Complaint).

In addition, Defendant Turner representative Ginger Beasley, acknowledged that they spoke with Defendant Country Trust Bank representative "Bo," after Plaintiff had called Defendant Country Trust representative "Bo."  (This information is not included in Complaint). Defendant Turner and Defendant Country Trust Bank both stated that they would give Plaintiff proof of his payment history, but at the time of the filing of the lawsuit, had failed to do so.

From September 10, 2016, until June 22, 2017, $1,162.37 was removed from Plaintiff's check, and paid to Defendant Country Trust Bank, as 401(k) loan repayments.  (This information is not included in Complaint).  The payment totals reflect the amount Defendant Country Trust Bank represented was due in June of 2016.  The payment on Plaintiff's check dated June 22, 2017, was for $51.77, as opposed to the agreed upon repayment amount of $55.53 per paycheck, presumably because it was the last payment to reach the total of $1,162.37.  (This information is not included in Complaint).  However, on Plaintiff's paycheck dated July 20, 2017, another $26.42 was taken out as a 401(k) loan repayment.  (This information is not included in Complaint).

## Argument

    **a.**    **Defendant Country Trust Bank Seeks To Have Its Motion Considered Under Federal Rule of Civil Procedure 56.**

There is no legitimate basis to dismiss Plaintiff's complaint against Defendant Country

Trust Bank under Federal Rule 12 or 56, because genuine disputes to material facts exist. Defendant Country Trust Bank argues that ERISA is the law that controls, and Plaintiff disagrees. However, even if ERISA was the appropriate law, based on the facts, Defendant Country Trust Bank has violated the laws according to ERISA as well. Therefore, Defendant Country Trust Bank's motion should be denied.

    **b.    ERISA Does Not Apply To This Matter, But Even If It Did, Defendant Country Trust Bank Has Violated ERISA.**

Defendant Country Trust Bank argues that ERISA applies to Plaintiff's allegations, but ERISA does not apply because what is in dispute is the handling of a loan, and not an employee pension benefit plan. In this case, the loan was simply secured by Plaintiff's 401(k), but that is not enough to take Plaintiff's claims out of state law, and into ERISA.

According to 29 U.S.C. § 1002:

(2)
(A) Except as provided in subparagraph (B), the terms "employee pension benefit plan" and "pension plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program—
(i)
provides retirement income to employees, or
(ii)
results in a deferral of income by employees for periods extending to the termination of covered employment or beyond,
regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan. A distribution from a plan, fund, or program shall not be treated as made in a form other than retirement income or as a distribution prior to termination of covered employment solely because such distribution is made to an employee who has attained age 62 and who is not separated from employment at the time of such distribution.

Plaintiff receiving a loan of $4,000, does not apply to what was contemplated under ERISA, and is not included in ERISA. At best, Plaintiff's loan would be classified as a separate

excess benefit plan.

According to 29 U.S.C. § 1002:

(36)
The term "excess benefit plan" means a plan maintained by an employer solely for the purpose of providing benefits for certain employees in excess of the limitations on contributions and benefits imposed by section 415 of title 26 on plans to which that section applies without regard to whether the plan is funded. To the extent that a separable part of a plan (as determined by the Secretary of Labor) maintained by an employer is maintained for such purpose, that part shall be treated as a separate plan which is an excess benefit plan.

As it relates to an excess benefit plan, under 29 U.S.C. § 1003(b)(5), Plaintiff's benefit plan that allowed for Plaintiff to receive a loan, would not be included under ERISA. Furthermore, as previously stated, the procedures as it related to receiving a loan was not being equally applied to all employees. Reginald Harris was allowed two loans, whereas Plaintiff was denied a second loan: without being given a reason; without the denial being in writing; despite the fact that Defendant Country Trust Bank informed Plaintiff that he could have a second loan once the first loan was paid off, but then recanted and told Plaintiff to ask Defendant Turner; and despite the fact that Defendant Country Trust Bank was the party designated to make that determination, and made that determination for other employees. For all of the reasons stated, ERISA would not apply to Plaintiff receiving a loan, merely because the loan was backed by Plaintiff's 401(k).

If this Court were to conclude that ERISA is the prevailing law that applies, as part of ERISA, providing a loan to Plaintiff, with different treatment from the way in which the loan was provided to other employees, violates ERISA under 29 U.S.C. § 1006.

In addition, under the 401(k) plan, it contains a requirement that the participants be treated equally. (ECF No. 10, Exhibit A, page 7, 52). In this case, Plaintiff was treated

differently from at least one similarly situated employee, Reginald Harris.

Furthermore, Defendant Country Trust Bank described itself as the trustee in its Motion to Dismiss, and based on Defendant Country Trust Bank being the Trustee, they were required to determine if Plaintiff could receive a second loan, and not Defendant Turner, who Defendant Country Trust Bank deferred to, after originally telling Plaintiff that he would be able to obtain a second loan.  (ECF No. 10, Exhibit A, page 52, § 7.11; Exhibit C, page 4, 10).

Defendant Country Trust Bank was made aware of inappropriate conduct involving Plaintiff's loan, and his treatment.  Specifically, Defendant Country Trust Bank represented to Plaintiff that he owed $1,162.37 on his loan, even though it admitted that according to its records, Plaintiff was current until December 23, 2013.  Plaintiff was not in default on his loan. According to Defendant Country Trust Bank's own records, Plaintiff would have had a remaining balance of $711.46 as of December 23, 2013.  However, Defendant Country Trust Bank admitted that there were at least six payments made in 2014, which he could see were made, but were never posted.  Based on this information, Defendant Country Trust Bank continued to represent to Plaintiff that the outstanding balance was $1,162.37, and collected this balance from September 10, 2016, to June 22, 2017.  However, on the check dated July 20, 2017, Defendant Country Trust Bank collected yet another payment from Plaintiff, all while failing to provide Plaintiff with his payment history, as promised.

Defendant Country Trust Bank was also the party qualified to provide Plaintiff with a second loan, but instead, after informing Plaintiff that he could have a new loan, then told Plaintiff that the decision would be Defendant Turner's to make, who then denied Plaintiff another loan verbally, and not in writing.  Any denial of a claim for benefits is required to include

a statement of the denial, with specific references. (ECF No. 10, Exhibit A, page 59). Defendant Country Trust Bank did not do this with Plaintiff.

In addition, Plaintiff, who never defaulted on the loan, was in compliance with the contract between Plaintiff and Defendant Country Trust Bank. Specifically, the contract stated in part:

The borrower is responsible for making certain that the employer is withholding the proper loan payments. If the Borrower determines that a loan payment has not been withheld, the Borrower must notify the employer and arrange for make-up payment(s) before a default occurs. If the Borrower does not make the missed loan payment(s) and a default occurs, the Borrower will be subject to adverse federal tax consequences.

At the option of the HOLDER of this Note, until payment in full or maturity, all monies payable under this Note are due and immediately payable. The Note is in default if any payment remains unpaid beyond the last day of the calendar quarter following the calendar quarter in which the Borrower missed the scheduled payment.

ECF No. 10, Exhibit E, Page 2.

According to the language in the agreement, Plaintiff was in compliance. If the Borrower determines that a loan payment has not been withheld, then the Borrower must notify the employer. This leaves the Borrower as the party to ascertain whether a payment was made. If the Borrower concludes that a payment was not made, in order to be in compliance, all a Borrower must do is notify the employer, and arrange for the make-up payment. Once the Borrower does this, he is not responsible, and cannot control if the employer actually applies the payment or not. It would be improper and go against logic, and the language of the agreement, to hold the Borrower liable to incur additional expenses based on Employer or Defendant Country Trust Bank for failing, or refusing to, apply payments once they have been notified to do so. This explains why Plaintiff was never found to have defaulted, or to be delinquent on the loan, even

when Defendant Country Trust Bank alleged that no payments were being made.  When Plaintiff asked Defendant Turner about his loan in June of 2016, he was informed by Ginger Beasley that it was paid off.  This contradicts what Plaintiff was told by Defendant Country Trust Bank.  Plaintiff also never "missed" a scheduled payment.  As long as Plaintiff was working, the scheduled payment would come out of Plaintiff's check, so Plaintiff could not "miss" a payment.  To the contrary, even Defendant Country Trust Bank acknowledged that there were payments made, and received from Plaintiff, but were never actually credited to Plaintiff.  In addition, when Plaintiff disputed that he owed any payments in June of 2016, Defendant Country Trust Bank promised to provide Plaintiff with proof of his payment history, but neglected to do so.

Although Defendant Country Trust Bank was made aware of these issues by Plaintiff in June of 2016, it also communicated directly with Defendant Turner regarding these issues.  After communicating with Defendant Turner, and still without providing Plaintiff with his payment records, Defendant Country Trust Bank continued with the conduct that is spelled out in this response.  Defendant Country Trust Bank continued to delay the posting of payments that it acknowledged it received, as well as refused to provide Plaintiff with a payment history, once it became clear that the recordkeeping was not properly done.  This caused extra payments and interest to accrue against Plaintiff, and these financial injuries were known by Defendant Country Trust Bank.

Therefore, even if it was determined that ERISA applies, Defendant Country Trust would be in violation of ERISA, under 29 U.S.C. Sections 1104, 1106, 1109, 1132, and 1133.

The extent of Defendant Country Trust Bank's involvement cannot be determined at this early and premature stage, and only after the Discovery process occurs will their involvement be

clearer. However, even at this premature stage there is sufficient evidence that would allow this matter to proceed against Defendant Country Trust Bank.

## Conclusion

For the reasons stated, Plaintiff asks that the Honorable Court DENY Defendant Country Trust Bank's Motion to Dismiss.

Respectfully Submitted,

_s/Terrell Tooten__
BPR 028506
1160 Vickery Ln, Suite 2
Cordova, TN, 38016
(901) 304-8539 office
(901) 347-8776 fax
attorneyterrelltooten@gmail.com
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been sent via electronic mail to Defendant, through its attorney of record, on this date the 5TH day of November 2017 through the electronic filing system.

Jonathan Skrmetti: 6075 Poplar Ave, Suite 500, Memphis, TN, 38119, attorney for Country Trust.

Robert Meyers: 6000 Poplar Ave, Suite 400, Memphis, TN, 38119, attorney for Turner Holdings.

__s/Terrell Tooten____

Terrell Tooten