IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| KEVIN CASH,<br><br>    Plaintiff,<br><br>v.<br><br>COUNTRY TRUST BANK and TURNER<br>HOLDINGS, LLC,<br><br>    Defendants. | No. 17-cv-2611-SHM-tmp |

**ORDER**

Before the Court are two motions. The first is Defendant Turner Holdings, LLC's ("Turner") December 13, 2017 Motion to Dismiss Plaintiff's First Amended Complaint ("Turner's Motion to Dismiss"). (ECF No. 31.) Plaintiff Kevin Cash responded on December 27, 2017. (ECF No. 33.)

The second is Defendant Country Trust Bank's ("Country Trust") December 21, 2017 Supplemental Motion to Dismiss ("Country Trust's Motion to Dismiss"). (ECF No. 32.) Cash responded on December 28, 2017. (ECF No. 34.) Country Trust replied on January 11, 2018. (ECF No. 40.)

For the following reasons, Turner's Motion to Dismiss and Country Trust's Motion to Dismiss (collectively, "Motions to Dismiss") are GRANTED in part and DENIED in part.

## I.  Background

This case arises from an attempt to obtain a loan from a 401(k) plan, the repayment of a previous loan obtained from that plan, an IRS levy, and a failure to compensate for labor.

Cash brings state law claims for fraud, unjust enrichment, breach of contract, conversion, negligence, intentional infliction of emotion distress, and negligent infliction of emotional distress.  In the alternative, he brings a claim under the Employee Retirement Income Security Act of 1974 ("ERISA") as amended, 29 U.S.C. §§ 1001, et. seq.

### A. Factual and Procedural Background

At all relevant times, Cash was an employee of Turner. (See Amend. Compl., ECF No. 29 ¶¶ 3, 5, 36.)

Turner is an Adopting Employer of the Prairie Farms Dairy, Inc. 401(k) Plan (the "401(k) Plan") through a Participation Agreement for Prairie Farms Dairy, Inc. 401(k) Plan (the "Participation Agreement").  (See 401(k) Plan, ECF No. 32-1; Participation Agreement, ECF No. 32-3.)  The 401(k) Plan allows plan participants to secure loans from a trust fund.  (401(k) Plan, ECF No. 32-1 at 424.)[1]  Country Trust is the Trustee of the 401(k) Plan under the Prairie Farms Dairy, Inc. 401(k) Plan Trust Agreement (the "Trust Agreement").  (Trust Agreement, ECF No. 10-3.)

---

[1] Unless otherwise noted, all pin cites for record citations are to the "PageID" page number.

As a Turner employee, Cash was afforded retirement benefits under the 401(k) Plan. (<u>See</u> Amend. Compl., ECF No. 29 ¶¶ 5, 10; <u>see generally</u> 401(k) Plan, ECF No. 32-1.)

On June 24, 2011, Turner secured a $4,000 loan under the 401(k) Plan. (<u>See</u> Amend. Compl., ECF No. 29 ¶ 9; 401(k) Plan Loan Issuance Confirmation, ECF No. 32-5.) The loan was to be repaid through monthly payments deducted from Cash's paycheck. (Amend. Compl., ECF No. 29 ¶ 13; 401(k) Plan Loan Issuance Confirmation, ECF No. 32-5 at 491.) The promissory note evidencing the loan became "due and payable on the maturity date June 26, 2014. . . ." (401(k) Plan Loan Issuance Confirmation, ECF No. 32-5 at 491.)

Some time before June 2016, a Turner representative told Cash his first loan had been paid in full. (Amend. Compl., ECF No. 29 ¶ 19.) In June 2016, Cash sought a second loan under the 401(k) Plan. (<u>Id.</u> ¶¶ 16-18.) Country Trust informed Cash that he had a remaining balance of $1,162.37 on his first loan. (<u>Id.</u> ¶ 20.) Country Trust's representative told Cash that its records reflected that Cash had made payments from June 2011 to December 2013, and that six payments Cash had made in 2014 had not been credited. (<u>Id.</u> ¶¶ 20-21, 23-24.) Cash was also told that he could obtain a second loan once his first loan had been

paid.  (Id. ¶ 27.)[2]  Country Trust directed Cash to make his second loan request directly to Turner, which would determine Cash's eligibility to secure a second loan.  (Id. ¶ 30.)

The same month, Cash spoke with a Turner representative who told Cash that "he could not have another loan, and that he did not qualify for another loan."  (Id. ¶¶ 30-31.)

Between September 10, 2016, and June 22, 2017, $1,162.37 was removed from Cash's paychecks as repayment for his 2011 loan.  (Id. ¶¶ 36-37.)  On July 20, 2017, $26.42 was removed from Cash's paycheck as repayment for his 2011 loan.  (Id. ¶ 39.)

On March 13, 2017, the Internal Revenue Service ("IRS") sent Turner a notice of levy on Cash's wages to pay unpaid taxes.  (Id. ¶ 48.)  The notice instructed Turner to give the letter to Cash "immediately."  (Id. ¶ 49.)

Turner gave Cash the letter on April 10, 2017.  (Id. ¶ 54.)  The same day, Turner removed $903.37 from Cash's paycheck in accordance with the levy.  (Id. ¶¶ 55, 57-58, 60.)

Cash contacted the IRS.  The IRS told Cash that Turner had miscalculated the amount of money to be removed from Cash's paycheck to satisfy the levy.  (Id. ¶ 63.)

---

[2] Cash also alleges that another employee was able to secure a second loan after that employee paid his first loan.  (Amend. Compl., ECF No. 29 ¶ 33.)

On April 20, 2017, the IRS released the levy on Cash's wages. (Id. ¶ 66; ECF No. 31-4.)

On or about April 27, 2017, Turner failed to pay Cash for 16 hours of work. (Amend. Compl., ECF No. 29 ¶ 68.) After that, Turner removed $1 from Cash's paychecks as an "ADMFEE." (Id. ¶ 69.)

On July 20, 2017, Cash filed a complaint against Turner and Country Trust (collectively, "Defendants") in the Shelby County Circuit Court for the Thirtieth Judicial District at Memphis. (ECF No. 1-1 at 9.) Cash brought claims of fraud, unjust enrichment, breach of contract, conversion, negligence, intentional infliction of emotional distress ("IIED"), and negligent infliction of emotional distress ("NIED"). (Id. at 9-17.)

On August 23, 2017, Defendants removed to this Court on the basis of diversity jurisdiction and subject matter jurisdiction. (Notice of Removal, ECF No. 1 at 2-6.)

On August 30, 2017, Defendants separately moved to dismiss Cash's complaint. (ECF Nos. 8-10.) Cash responded on November 5, 2017. (ECF Nos. 19-20.)

On November 6, 2017, Cash moved to amend the complaint. (ECF No. 21.) Turner responded on November 16, 2017. (ECF No. 23.) Country Trust responded on November 20, 2017. (ECF No. 24.)

The Court granted leave to amend the complaint on December 5, 2017.  (ECF No. 28.)  Cash filed the Amended Complaint the same day.  (Amend. Compl., ECF No. 29.)  In the Amended Complaint, Cash brings state law claims of fraud, unjust enrichment, breach of contract, conversion, negligence, IIED, and NIED.  (Id.)  In the alternative, he brings a claim under ERISA.  (Id.)

On December 8, 2017, the Court dismissed as moot Defendants' August 30, 2017 motions to dismiss.  (ECF No. 30.)

On December 13, 2017, Turner filed its Motion to Dismiss. (ECF No. 31.)  On December 21, 2017, Country Trust filed its Motion to Dismiss.  (ECF No. 32.)  Cash timely responded.  (ECF Nos. 33-34.)  Country Trust replied on January 11, 2018.  (ECF No. 40.)

**B. Plan Documents**

**1. Prairie Farms Dairy, Inc. 401(k) Plan**

The 401(k) Plan provides in relevant part:

The purpose of this Plan is to provide retirement benefits to Employees.  This Plan is designated as a 401(k) profit sharing plan.
This Plan is for the exclusive benefit of the Participants and their Beneficiaries, and it shall be interpreted and administered in a manner consistent with the provisions of the Employee Retirement Income Security Act of 1974 (ERISA) and the Internal Revenue Code of 1986, as amended.

(401(k) Plan, ECF No. 32-1 at 379.)

Under the 401(k) Plan, participants may obtain loans secured by the 401(k). Those loans are subject to the following provisions:

**Loans to Participants.** Subject to any rules or procedures set forth in a written loan policy that may be established by the Administrator or elected in the Participation Agreement, the Trustee may permit loans to be made from the Trust Fund to Participants and Beneficiaries, and subject to any such rules or procedures, all loans will be made in accordance with the following provisions:

**(a) Availability of Loans.** The Administrator will have the sole right to approve or disapprove a loan application, but loans will be made available to all Participants on a reasonably equivalent basis.

. . .

**(d) Written Loan Agreement.** All loans must be evidenced by a legally enforceable agreement (which may include more than one document) set forth in writing or in such other form as may be approved by the Internal Revenue Service, and the terms of such agreement must specify the amount and term of the loan, and the repayment schedule.

. . .

**(h) Loans Must Bear Reasonable Interest.** Any loan must bear interest at a rate reasonable at the time of application, considering the purpose of the loan and the rate being charged by representative commercial banks in the local area for a similar loan, unless the Administrator sets forth a different method for determining loan interest rates in its loan procedures such as using the prime rate or some other rate based on the prime rate. The loan agreement will also provide for the payment of principal and interest not less frequently than quarterly. Such interest will be credited either directly to the Participant's Account, or in the alternative to the general Trust Fund, as set forth in the loan policy.

**(i) <u>Loans Must be Secured.</u>** If a Participant's loan application is approved by the Administrator, such Participant will be required to execute a note, a loan agreement and an assignment of his Vested Aggregate Account as collateral for the loan. The Administrator, on a nondiscriminatory basis, may permit a Participant to pledge outside security in lieu of pledging his Vested Aggregate Account as collateral. The Participant must obtain the consent of his Spouse, if any, within the 180-day period before the Participant's Vested Aggregate Account is used as security for the loan.

. . .

**(n) <u>Establishment of Administrative Procedures.</u>** The Administrator may, in a separate written loan policy, establish rules or procedures regarding the conditions under which the Trustee can make loans to Participants. Such separate written document, when properly executed, will be deemed incorporated in this Plan. The rules or procedures therein may be modified or amended by the Administrator without the necessity of amending this Section, but any such modifications must be communicated to Participants.

(<u>Id.</u> at 424-26.)

The claim procedure under the 401(k) Plan is:

(a) Each Participant (or Beneficiary) may make application to receive a benefit under the Plan by filing such form as the Administrator prescribes. Within 60 days of the date that the application is received, the Administrator will inform the Participant (or Beneficiary), in writing, of the amount of benefit due, if any, or of the denial of the claim for benefit.

(b) Any denial of a claim for benefit will include a statement of the reasons for the denial, specific references to Plan provisions on which the denial is based, a description of any additional information the Administrator needs to make a decision under the Plan, an explanation of why such information is

necessary and an explanation of the Plan's claims
procedure.

. . .

    (g) Where a Participant (or Beneficiary) does not
comply with the provisions of this Section within the
time prescribed (including extensions), the action of
the committee shall then be final and conclusive and
shall not be subject to further appeal or review.

(Id. at 431.)

    The 401(k) Plan defines the "Administrator" and "Plan

Administrator" as "the committee or the person or group of

persons designated by the Sponsor as Administrator of the Plan,

but if no committee or no other Administrator is specifically

designated, the Sponsor shall be considered the Administrator.

The Administrator shall be the named fiduciary of the Plan."

(Id. at 380, 430.)

    The "Sponsor" is defined as "Prairie Farms Dairy, Inc.

Any action or determination of the Sponsor under the Plan shall

be by its Directors." (Id. at 390.)

    The 401(k) Plan defines the "Trustee" as the "Trustee

named in a separate trust document which is used in conjunction

with the Plan." (Id. at 391.) The "Trust Fund" is "the fund

as defined in the separate trust agreement which is used in

conjunction with the Plan." (Id.)

    The 401(k) Plan contemplates that third-party employers

will adopt its provisions. Those third-party employers are

"Adopting Employers," defined as "any entity which adopts this

9

Plan with the consent of the Sponsor.  In addition to all other terms and conditions in the Plan, Adopting Employers will be subject to, and must comply with, the terms and conditions set forth in the separate trust agreement."  (<u>Id.</u> at 380.)  An Adopting Employer adopts the 401(k) Plan by a "Participation Agreement," which is an "agreement whereby an entity becomes an Adopting Employer and designates its elections with regard to specific provisions of this Plan."  (<u>Id.</u> at 389.)

### 2. Prairie Farms Dairy, Inc. 401(k) Plan Loan Policy

The Loan Policy was adopted by the Plan Administrator of the 401(k) Plan.[3]  (Loan Policy, ECF No. 32-4 at 486.)  It requires participants to "apply for each loan in writing with an application which specifies the amount of the loan desired, the requested duration for the loan and the source of security for the loan."  (<u>Id.</u>)  The Loan Policy also limits the number of loans available to participants to one loan outstanding at a time.  (<u>Id.</u> at 486.)

Under the Loan Policy, the Plan Administrator may charge a participant's account three fees for each loan: (1) $150 Loan set-up fee deducted from the participant's account balance; (2) monthly loan maintenance fee set at 0.70% of market value deducted from the participant's account; and (3) annual loan

---

[3] The documents provided by the parties do not identify the Plan Administrator.  The documents refer to the Plan Administrator as "[t]he Plan Administrator of the Prairie Farms Dairy, Inc. 401(k) Plan[.]"  (ECF No. 32-4 at 486.)

maintenance fee for each calendar year the loan is outstanding. (<u>Id.</u> at 489.)

### 3. Prairie Farms Dairy, Inc. 401(k) Plan Trust Agreement

The Trust Agreement establishes Country Trust as the Trustee for the 401(k) Plan. (Trust Agreement, ECF No. 10-3 at 168.) The Trustee's responsibilities include: "At the direction of the Administrator, to pay benefits required under the Plan to be paid to Participants . . . and [t]o maintain records of receipts and disbursements and furnish to the Employer and/or Administrator for each Plan Year a written annual report. . . ."

Addressing loans to participants, the Trust Agreement provides, in relevant part:

> (a) The Trustee may, in the Trustee's discretion, make loans to Participants and Beneficiaries under the following circumstances: (l) loans shall be made available to all Participants and Beneficiaries on a reasonably equivalent basis; (2) loans shall not be made available to Highly Compensated Employees in an amount greater than the amount made available to other Participants and Beneficiaries; (3) loans shall bear a reasonable rate of interest; (4) loans shall be adequately secured; and (5) loans shall provide for periodic repayment over a reasonable period of time.
>
> . . .
>
> (d) Any loans granted or renewed shall be made pursuant to a Participant loan program.
>
> . . .
>
> Such Participant loan program shall be contained in a separate written document which, when properly executed, is hereby incorporated by reference and made a part of the Plan.

11

(Id. at 174-76.)

### 4. Participation Agreement for Prairie Farms Dairy, Inc. 401(k) Plan

The Participation Agreement designates Turner as "an Adopting Employer of the [401(k) Plan] . . . subject to the provisions of this Participation Agreement and the Plan." (Participation Agreement, ECF No. 32-2 at 460.)

The Participation Agreements establishes that Turner adopted the 401(k) Plan as of July 1, 2007, and elected to provide loans to participants. (Id. at 460, 466.)

### 5. 401(k) Plan Loan Issuance Confirmation

The 401(k) Plan Loan Issuance Confirmation describes the $4,000 loan Cash obtained through the 401(k) Plan in 2011. (ECF No. 32-5.) The terms of the loan, in relevant part, are as follows:

> For value received, KEVIN D CASH, the undersigned Borrower, promises to pay COUNTRY Trust Bank, Trustee of the PRAIRIE FARMS DAIRY 40l(K) PLAN, or order, the sum of $4,000.00 together with interest on the unpaid balance at the rate of 5.25% per annum, payable in equal biweekly payments of $55.53 each, including interest.
> The first payment is due on July 14, 2011, with like payments due each pay period thereafter until the Borrower has made all payments under this Note. So long as the Holder is a retirement plan and the Borrower is an employee of the plan sponsor, the Borrower shall make payments by payroll withholding. If not paid sooner, this Note in any event is due and payable on the maturity date June 26, 2014 or the date the Borrower terminates employment with the Employer, if earlier.

> The Borrower is responsible for making certain that
> the employer is withholding the proper loan payments.
> . . .
> The Borrower secures this loan by a pledge and
> irrevocable assignment of his/her vested interest in
> the above referenced Plan.

(Id. at 491.)

## II. Jurisdiction & Choice of Law

### A. Jurisdiction

Cash's original complaint, removed to this Court, alleges multiple state law claims. This Court has diversity jurisdiction under 28 U.S.C. § 1332 over Cash's state law claims. Cash is a resident and citizen of Memphis, Tennessee. (Amend. Compl., ECF No. 29 ¶ 2.) Turner is a limited liability corporation, which is a citizen of every state where its members are citizens. See Delay v. Rosenthal Collins Grp., LLC, 585 F.3d 1003, 1005 (6th Cir. 2009). At the time of filing, Turner's members were citizens of Illinois and Kansas. (Notice of Removal, ECF No. 1 ¶¶ 14-16.) Turner is a citizen of Illinois and Kansas. Country Trust is a federal savings association, which is a citizen of "the State in which [it] has its home office." 12 U.S.C. § 1464(x). Country Trust's home office is in Illinois. (Notice of Removal, ECF No. 1 ¶ 13.) Country Trust is an Illinois citizen. There is complete diversity.

Cash seeks damages in excess of $75,000. (Amend. Compl., ECF No. 29 at 326-27.) "[T]he sum claimed by the plaintiff controls if the claim is apparently made in good faith." St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288 (1938); see Mass. Cas. Ins. Co. v. Harmon, 88 F.3d 415, 416 (6th Cir. 1996). The requirements of diversity jurisdiction are satisfied.

In his Amended Complaint, Cash reasserts his state law claims and brings an alternative claim under ERISA. The Court has federal question jurisdiction over Cash's ERISA claim. Under 28 U.S.C. § 1331, United States district courts have original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." The Amended Complaint alleges that Defendants violated ERISA. That claim arises under the laws of the United States.

### B. Choice of Law

A federal court exercising diversity jurisdiction applies the choice-of-law rules of the forum state to a plaintiff's state law claims. Standard Fire Ins. Co. v. Ford Motor Co., 723 F.3d 690, 692 (6th Cir. 2013).

Cash implicitly invokes Tennessee tort and contract law. (See ECF No. 1-1; see also Amend. Compl., ECF No. 29.) Defendants do not challenge the application of Tennessee law. To the extent Cash's state law claims are not preempted by

14

ERISA, the Court will apply Tennessee substantive law.  See GBJ
Corp. v. E. Ohio Paving Co., 139 F.3d 1080, 1085 (6th Cir.
1998) (finding courts need not analyze choice of law questions
sua sponte).

**III. Legal Standard**

In addressing a motion to dismiss for failure to state a
claim under Federal Rule of Civil Procedure 12(b)(6), the Court
must construe the complaint in the light most favorable to the
plaintiff and accept all well-pled factual allegations as true.
League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523,
527 (6th Cir. 2007).  A plaintiff can support a claim "by
showing any set of facts consistent with the allegations in the
complaint."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563
(2007).  This standard requires more than bare assertions of
legal conclusions.  Bovee v. Coopers & Lybrand C.P.A., 272 F.3d
356, 361 (6th Cir. 2001).  Any claim for relief must contain "a
short and plain statement of the claim showing that the pleader
is entitled to relief."  Erickson v. Pardus, 551 U.S. 89, 93
(2007) (per curiam).  "Specific facts are not necessary; the
statement need only 'give the defendant fair notice of what the
. . . claim is and the grounds upon which it rests.'"  Id.
(citing Twombly, 550 U.S. at 555.)  Nonetheless, a complaint
must contain sufficient facts "to 'state a claim to relief that
is plausible on its face'" to survive a motion to dismiss.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

Ordinarily, a court's consideration of a motion to dismiss under Rule 12(b)(6) is limited to the pleadings. Reference to materials outside the pleadings may convert the motion into one for summary judgment. Jones v. City of Cincinnati, 521 F.3d 555, 562 (6th Cir. 2008). However, "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." Commercial Money Ctr., Inc. v. Ill. Union Ins. Co., 508 F.3d 327, 335–36 (6th Cir. 2007). A court may also consider public records without converting the motion to one for summary judgment. Rondigo, L.L.C. v. Twp. of Richmond, 641 F.3d 673, 680-81 (6th Cir. 2011).

When addressing ERISA claims, courts may consider ERISA plan documents not attached to a complaint where a plaintiff's claims are "based on rights under plans which are controlled by the plans' provisions as described in the plan documents" and where the documents are "incorporated through reference to the plaintiff's rights under the plans, and they are central to plaintiff's claims." Weiner v. Klais & Co., Inc., 108 F.3d 86, 89 (6th Cir. 1997); see City of Monroe Employees Ret. Sys. v. Bridgestone Corp., 399 F.3d 651, 659 n.6 (6th Cir. 2005).

## IV. Analysis

Defendants seek to dismiss all of Cash's state law claims as preempted by ERISA and to dismiss Cash's ERISA claims for failure to state a claim. (See ECF Nos. 31-32.) Cash contends that additional discovery is required, that his state law claims are not preempted, and that he has sufficiently pled an ERISA claim. (See ECF Nos. 33-34.)

### A. Conversion to Motion for Summary Judgment

Cash argues that "no legitimate basis [exists] to dismiss Plaintiff's complaint against Defendant Turner, because genuine disputes to material facts exist" for which further discovery is necessary. (ECF No. 33 at 509; see ECF No. 34 at 522.) The Court understands Cash to contend that Defendants' Motions to Dismiss should be converted to motions for summary judgment. That argument lacks merit.

Defendants have attached the following documents to their Motions to Dismiss: the 401(k) Plan (ECF No. 32-1), Turner's Participation Agreement (ECF No. 32-2), the 401(k) Plan Trust Agreement (ECF No. 32-3), the 401(k) Plan Loan Policy (ECF No. 32-4), Cash's 2011 401(k) Plan Loan Issuance Confirmation (ECF No. 32-5), Cash's state court complaint (ECF No. 31-2), 2017 Internal Revenue Service ("IRS") Tables for Figuring Amount Exempt from Levy on Wages, Salary, and Other Income (ECF No.

31-3), and a Release of Levy/Release of Property Levy for Cash (ECF No. 31-4).

In his Amended Complaint, Cash refers to the 401(k) Plan, the 401(k) Plan Loan Policy, the levy and release of levy on Cash's wages, and the state court action. (Amended Compl., ECF No. 29 ¶¶ 5, 10, 18, 36, 39, 49, 66-67, 87 129, 134, 161, 175.) The 401(k) Plan and loan, the state court action, and the levy on Cash's wages are integral to Cash's state and ERISA claims. (See id.) Those documents may be considered without converting the Motions to Dismiss to motions for summary judgment. Commercial Money, 508 F.3d at 335–36.

The 2017 Internal Revenue Service ("IRS") Tables for Figuring Amount Exempt from Levy on Wages, Salary, and Other Income (ECF No. 31-3) are public records and may be considered without converting the Motions to Dismiss to motions for summary judgment. Rondigo, 641 F.3d at 680-81.

Because the documents attached to Defendants' Motions to Dismiss are referenced in the Amended Complaint, are crucial of Cash's claims, or constitute public records, Cash's request to convert the Motions to Dismiss to motions for summary judgment is DENIED.

### B. ERISA & Preemption

ERISA applies only where there is an "employee benefit plan." ERISA defines "employee benefit plan" as "an employee

18

welfare benefit plan or an employee pension benefit plan or a
plan which is both an employee benefit plan and an employee
pension benefit plan." 29 U.S.C. § 1002(3). Courts in this
circuit have found that 401(k) plans are employee benefit plans
under 29 U.S.C. §§ 1002(3) and 1002(37). See, e.g., Perez v.
Eye Centers of Tennessee, LLC, No. 2:14-CV-0115, 2016 WL
6648854, at *1 (M.D. Tenn. Nov. 10, 2016); USW Indus. 401(k)
Fund v. Detroit Box Co., No. 3:12-CV-833, 2014 WL 2765680, at
*2 (M.D. Tenn. June 18, 2014); see also In re Regions Morgan
Keegan Sec., Derivative & ERISA Litig., No. 2:09-MD-02009-SHM,
2012 WL 13072082, at *1 (W.D. Tenn. Mar. 30, 2012) (analyzing
401(k) plan as an ERISA plan).

    The parties do not dispute that the 401(k) Plan is
governed by ERISA. ERISA governs plans like the 401(k) Plan,
which are enacted "to 'protect . . . the interests of
participants in employee benefit plans and their beneficiaries'
by setting out substantive regulatory requirements for employee
benefit plans and to 'provide for appropriate remedies,
sanctions, and ready access to the Federal courts.'" Aetna
Health, Inc. v. Davila, 542 U.S. 200, 208 (2004) (quoting 29
U.S.C. § 1001(b)). The 401(k) Plan was adopted by Turner for
the benefit of its employees and qualifies as an "employee
benefit plan" under ERISA Section 3(3). It is subject to Title

I of ERISA pursuant to ERISA Section 4(a).  See 29 U.S.C. §§ 1002, 1003.

The parties dispute whether the 401(k) Plan loan provision and supplemental documentation are governed by ERISA.  Turner argues that Cash's "breach of contract, fraud, conversion and unjust enrichment claims based on alleged misrepresentations regarding and misappropriation of funds earmarked for the repayment of Plaintiff's 401(k) loan and Turner's alleged failure to provide Plaintiff with a second 401(k) loan upon [Plaintiff's] request must be dismissed because they are preempted by ERISA."  (ECF No. 31-1 at 338.)

Cash argues that ERISA does not apply because "the loan was simply secured by Plaintiff's 401(k), but that is not enough to take Plaintiff's claims out of state law, and into ERISA."  (ECF No. 34 at 522.)  Cash contends that, "[a]t best, Plaintiff's loan would be classified as a separate excess benefit plan."  (Id. at 523.)

ERISA provides a uniform regulatory regime governing employee benefit plans and includes expansive preemption provisions intended to ensure that employee benefit plan regulation is "exclusively a federal concern."  Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 523 (1981).  The express preemption clause provides that ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate

20

to any employee benefit plan." 29 U.S.C. § 1144(a). "A law relates to an employee benefit plan 'if it has a connection with or reference to such a plan.'" Crabbs v. Copperweld Tubing Products Co., 114 F.3d 85, 90 (6th Cir. 1997) (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 87 (1983)); Metropolitan Life Ins. Co. v. Mass., 471 U.S. 724, 730, 732-33, (1985). A law has a connection with an employee plan under ERISA "'even if the law is not specifically designed to affect such plans, or the effect is only indirect, and even if the law is consistent with ERISA's substantive requirements.'" Thiokol Corp. v. Roberts, 76 F.3d 751, 754 (6th Cir. 1996) (quoting District of Columbia v. Greater Wash. Bd. of Trade, 506 U.S. 125, 130 (1992)). The Sixth Circuit generally finds that ERISA preempts "most state law claims" that relate to an employee-benefit plan, particularly where those claims "explicitly refer to such a plan." See Zuniga v. Blue Cross & Blue Shield of Mich., 52 F.3d 1395, 1401 (6th Cir. 1995) (internal citations and quotation marks omitted).

The Supreme Court has articulated a two-prong test to determine whether a claim is completely preempted under § 1132(a) of ERISA. Davila, 542 U.S. at 210. A claim is completely preempted when it satisfies both prongs of the test:

> (1) the plaintiff complains about the denial of benefits to which he is entitled only because of the terms of an ERISA-regulated employee benefit plan;

and (2) the plaintiff does not allege the violation
of any legal duty (state or federal) independent of
ERISA or the plan terms.

Gardner v. Heartland Indus. Partners, LP, 715 F.3d 609, 613

(6th Cir. 2013) (quoting Davila, 542 U.S. at 210).  An

independent legal duty exists for purposes of ERISA preemption

where the legal duty "would exist whether or not an ERISA plan

existed," Marin Gen. Hosp. v. Modesto & Empire Traction Co.,

581 F.3d 941, 950 (9th Cir. 2009), or where there is no need

"to interpret the plan to determine whether that duty exists,"

Gardner, 715 F.3d at 614.

Since Davila, the Sixth Circuit has articulated three

categories of state laws that are preempted by ERISA:

state laws that (1) mandate employee benefit
structures or their administration; (2) provide
alternate enforcement mechanisms; or (3) bind
employers or plan administrators to particular
choices or preclude uniform administrative practice,
thereby functioning as a regulation of an ERISA plan
itself.

Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.

("PONI"), 399 F.3d 692, 698 (6th Cir. 2005).

**1. Excess Benefit Plan**

ERISA does not apply to "excess benefit plans," which are

unfunded.  29 U.S.C. §§ 1003(b)(5).  An "excess benefit plan"

is a plan established for the sole purpose of avoiding the

benefit and contribution limits established by 26 U.S.C. § 415.

"Whether a plan meets the requirements for the 'excess benefit

22

plan' exemption may be determined through an examination of the surrounding circumstances and an analysis of the stated purpose of the plan as determined by its plain language." Hutchison v. Crane Plastics Mfg., Ltd., No. 2:06-CV-297, 2006 WL 3346117, at *4 (S.D. Ohio Sept. 28, 2006) (citations omitted). Courts generally look for explicit and specific language stating that the only purpose of the plan is to avoid the limitations imposed by § 415 to conclude the plan is an "excess benefit plan." See Gamble v. Group Hospitalization & Med. Serv., Inc., 38 F.3d 126, 129-131 (4th Cir. 1994); Isko v. Engelhard Corp., 367 F.Supp.2d 702, 710 (D.N.J. 2005). If avoiding § 415 is not the sole purpose of the plan, even explicit language may fall short of exempting the plan from ERISA. Hutchison, 2006 WL 3346117, at *5 (collecting cases).

Cash contends that "[his] loan [sh]ould be classified as a separate excess benefit plan." (ECF No. 34 at 523.) To the extent Cash argues that the loan can be considered separately from the Plan, his argument is unsustainable given the allegations of the Amended Complaint. To the extent Cash argues that the Plan itself is an excess benefit plan, his argument is refuted by the language of the Plan. The 401(k) Plan and supplemental documents do not state that the sole purpose of the 401(k) Plan is to avoid § 415. The 401(k) Plan reads, "[t]he Plan shall be construed, enforced and

23

administered and the validity determined in accordance with
ERISA. . . ." (ECF No. 32-1 at 438; see id. at 379 ("This Plan
is for the exclusive benefit of the Participants and their
Beneficiaries, and it shall be interpreted and administered in
a manner consistent with the provisions of the Employee
Retirement Income Security Act of 1974 (ERISA) and the Internal
Revenue Code of 1986, as amended.")) Cash points to no
surrounding circumstances or additional language that suggests
the 401(k) Plan's sole purpose is to avoid § 415.

The 401(k) Plan is not an excess benefit plan. The loan
provision derives from the ERISA-qualifying 401(k) Plan and is
subject to ERISA. See 29 U.S.C. §§ 1002, 1003.

### 2. Fraud – Preemption

Cash alleges claims of fraud against Country Trust for
misrepresenting the amount of money Cash owed on his loan and
against Turner for informing Cash that he did not qualify for a
second loan. (Amend. Compl., ECF No. 29 ¶¶ 72, 80.)

State law claims for fraud and misrepresentation are
preempted if they provide "alternative enforcement mechanisms"
to the ERISA enforcement scheme. See Briscoe v. Fine, 444 F.3d
478, 498 (6th Cir. 2006). For example, if a fraud claim
asserts that "ERISA plan participants [have] rights to

24

information by virtue of their status as participants in the plan[,] [that claim] conflicts with ERISA's existing disclosure requirements and enforcement mechanisms." Loffredo v. Daimler AG, 500 F. App'x 491, 496 (6th Cir. 2012) (citation omitted).

Cash's claims of fraud are preempted by ERISA. In essence, Cash's fraud claim against Country Trust alleges that as an "ERISA plan participant[] [he has] rights to information by virtue of [his] status as participant[] in the plan[.]" Id. Cash alleges that Defendants mispresented the balance on his first loan and his eligibility to obtain a second loan. (Amend. Compl., ECF No. 29 ¶¶ 72-85.) He alleges that he was entitled to correct information and an explanation for his denial. (Id. ¶¶ 74, 84.) Those allegations are inconsistent with ERISA's existing disclosure requirements and enforcement mechanisms. Loffredo, 500 F. App'x at 496.

Cash's claims of fraud are also preempted by ERISA's requirement to make accurate reports to the plan administrator. See 29 U.S.C. § 1059(a)(1). Cash alleges that "Defendant Turner was not the qualified, or the appropriate party to make any representations to Plaintiff that he did not qualify for a second loan and the statement was a clear misrepresentation of a material fact." (Amend. Compl., ECF No. 29 ¶ 83.) The Trust Agreement states the requirement. It is the Trustee's

responsibility to furnish the Employer or Administrator with accurate financial records. (Trust Agreement, ECF No. 10-3 at 168.) Cash's fraud claim against Country Trust is preempted because it is based on state law that provides alternatives to EIRSA's enforcement mechanisms. See PONI, 399 F.3d at 689.

Cash's fraud claim against Turner is preempted because it seeks recovery of a benefit from the 401(k) Plan and would be an alternate mechanism to enforce ERISA. Briscoe, 444 F.3d at 498; see Ramsey v. Formica Corp., 398 F.3d 421 (6th Cir. 2005). The 401(k) Plan offers participants the opportunity to obtain loans, and provides that "[t]he Administrator will have the sole right to approve or disprove a loan application. . . ." (401(k) Plan, ECF No. 32-1 at 424.) Loan applications must be made in writing and participants are limited to one outstanding loan at a time. (Id. at 431; Loan Policy, ECF No. 32-4 at 486.) Cash's fraud claim against Turner, that it falsely informed him he did not qualify for a second loan, is a claim for a benefit under the 401(k) Plan and would provide an alternative means of enforcing ERISA. That claim is preempted.

Defendants' Motions to Dismiss are GRANTED on Cash's claims of fraud against Country Trust for misrepresenting the amount of money Cash owed on his loan and against Turner for informing Plaintiff he did not qualify for a second loan.

### 3. Unjust Enrichment & Conversion – Preemption

Cash alleges unjust enrichment and conversion because Country Trust directed Turner to remove funds from Cash's paycheck to repay his loan. (Amend. Compl., ECF No. 29 ¶¶ 110-20.) Cash contends that he owed less on the loan than Defendants reported and that Defendants have failed to return the excess funds. (Id.)

Cash's unjust enrichment and conversion claims are dependent on an ERISA plan. They would not exist if the 401(k) Plan and the loan provision did not exist. The removal of funds from Cash's paycheck was a term of the 401(k) Plan and supplemental loan documents. (See 401(k) Plan, ECF No. 32-1 at 424 ("All loans must be evidenced by a legally enforceable agreement (which may include more than one document) set forth in writing. . . ."); ECF No. 32-5 at 491 ("[T]he Borrower shall make payments [on the loan] by payroll withholding.").) Cash's claims implicate "plan assets" of the 401(k) Plan and the related loan. "Plan assets" include "amounts that a participant has withheld from his wages by an employer[] for . . . repayment of a participant loan to the plan. . . ." 29 C.F.R. § 2510.3-102. Cash's unjust enrichment and conversion claims are directly connected to the 401(k) Plan and loan.

Those claims are preempted.  Defendants' Motions to Dismiss those claims are GRANTED.

### 4. Breach of Contract – Preemption

Cash alleges five claims of breach of contract.  First, he alleges that Country Trust breached the 401(k) Plan loan agreement by removing funds from Cash's paycheck to repay the loan.  (Amend. Compl., ECF No. 29 ¶¶ 126-27.)  Second, Cash alleges that Turner breached the 401(k) Plan by removing funds from Cash's paycheck to repay the loan.  (<u>Id.</u>  ¶¶ 129-31.)  Third, Cash alleges that Turner breached the 401(k) Plan by denying Cash a second loan, providing no basis for the denial, and failing to put the denial in writing.  (<u>Id.</u>  ¶¶ 134-36).  Fourth, Cash alleges that Turner breached the 401(k) Plan by treating Cash differently than other employees, who were able to receive a second loan after paying off their first loan.  (<u>Id.</u> ¶¶ 33, 137.)  Fifth, Cash alleges that Turner breached Cash's employment contract by failing to compensate Cash for 16 hours of work.  (<u>Id.</u> ¶¶ 138-40.)

Breach of contract claims that relate to ERISA plans are generally preempted by ERISA.  <u>See, e.g.</u>, <u>Cromwell v. Equicor-Equitable HCA Corp.</u>, 944 F.2d 1272, 1276 (6th Cir. 1991) (finding that breach of contract and bad faith claims arising from a failure to provide benefits under the insurance contract

are preempted by ERISA); <u>Girl Scouts of Middle Tenn., Inc. v.</u>
<u>Girl Scouts of the U.S.A.</u>, 770 F.3d 414, 419 (6th Cir. 2014)
(state law claims based on breach of contract and fiduciary
duty were preempted by ERISA).

Cash's first four breach of contract claims arise from a
denial of benefits to which he asserts he is entitled under the
401(k) Plan and the loan provision. Cash "does not allege the
violation of any legal duty (state or federal) independent of
ERISA or the plan terms." <u>Gardner</u>, 715 F.3d at 613. The
401(k) Plan explicitly incorporates future documents relating
to a loan secured by the 401(k) Plan. (401(k) Plan, ECF No.
32-1 at 424 ("All loans must be evidenced by a legally
enforceable agreement (which may include more than one
document) set forth in writing . . . .").) The 401(k) Plan and
the supporting documents contemplated the duties of Country
Trust as Trustee and Turner as Adopting Employer to remove
funds from Cash's paycheck to repay the loan, to provide a
denial on receipt of a written application, and not to
discriminate. (<u>See</u> 401(k) Plan, ECF No. 32-1 at 380, 384, 391,
424 (defining "Adopting Employer" and "Trustee," and giving
Administrator "sole right to approve or disapprove a loan
application"); Participation Agreement, ECF No. 32-2; Trust
Agreement, ECF No. 10-3 at 174-76; Loan Policy, ECF No. 32-4

29

(limiting number of outstanding loans to each participant to one); ECF No. 32-5 (Cash's loan issuance with terms of repayment from payroll).)

Cash's breach of contract claims directly reference Plan documents. His claims would "result in mandating a specific employment benefit structure, providing an alternate enforcement mechanism of an ERISA plan, [and] regulating an ERISA plan itself," as well as "implicate relations among the traditional ERISA plan entities." PONI, 399 F.3d at 700 (internal citations and quotation marks omitted). Cash's first four breach of contract claims are preempted by ERISA.

Cash's fifth claim is based on his employment contract. (Amend. Compl., ECF No. 29 ¶¶ 138-40.)[4] Defendants do not contend that Cash's employment contract is subject to ERISA. Cash's hourly compensation is not preempted by ERISA because it is not a future benefit under an ERISA plan. Cf. Melton v. Physicians in Emergency Med., P.S.C., No. CIV.A.3:04-CV-183-S, 2006 WL 581009, at *6 (W.D. Ky. Mar. 3, 2006) (finding breach

---

[4] Turner argues, in a footnote, that its "alleged failure to pay [Cash] for 16 hours for which he worked" will be refuted by discovery, which "will show that this was nothing more than a clerical error which Turner corrected as soon as it was brought to its attention by paying [Cash] for the hours missing from his paycheck." (ECF No. 31-1 at 342 n.2.) The Court can consider only the allegations in the Amended Complaint and in referenced documents. The Court must construe the Amended Complaint in the light most favorable to Cash and accept all well-pled factual allegations as true. League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007). The Court cannot consider Turner's representation.

of employment contract claim not preempted by ERISA because it did not seek to enforce or assert rights to future benefits under an ERISA plan).  Turner's Motion to Dismiss the breach of contract claim is DENIED.

### C. Remaining State Law Claims

Cash's remaining state law claims are for: (1) workers' compensation; (2) negligence, IIED, and NIED – based on Turner's withholding Cash's pay in response to an IRS levy; (3) fraud, unjust enrichment, and conversion – based on Turner's removing "a $1 ADMFEE" from Cash's paychecks and failure to compensate Cash for 16 hours of work; (4) fraud – based on Turner's misrepresenting the date by which it received the IRS levy letter; and (5) negligence – based on Turner's failure to compensate Cash for 16 hours of work.

### 1.   Worker's Compensation

Turner argues that, to the extent Cash brings a worker's compensation claim for a work-related injury, a worker's compensation claim is "barred by the prior suit pending doctrine. . . ."  (ECF No. 31-1 at 339.)[5]  Cash asserts that he

---

[5] In Tennessee, the prior suit pending doctrine generally allows "a party [to] have an action barred on procedural grounds if there was a prior suit pending against him in the same jurisdiction for the same cause of action."  West v. Vought Aircraft Indus., Inc., 256 S.W.3d 618, 622 (Tenn. 2008).

"does not allege a cause of action for Worker's Compensation in this case." (ECF No. 33 at 512.) He represents that reference to his Worker's Compensation state claim was used as "factual background" to "provide[] some history between himself, and Defendant Turner." (Id.)

Because Cash does not allege a worker's compensation claim, Defendants' Motions to Dismiss that claim are DENIED as MOOT.

## 2. Negligence, IIED, and NIED -- IRS Levy

Cash brings negligence, IIED, and NIED claims against Turner for withholding an improper amount pursuant to the IRS levy and for failing to notify Cash of the IRS levy promptly. (Amend. Compl., ECF No. 29 at 319-24.) Turner contends that Cash's claims for negligence, IIED, and NIED arising from Turner's handling of Cash's IRS levy should be dismissed because "[t]he Internal Revenue Code specifically immunizes employers, like Turner, of any and all liability arising from a garnishment in compliance with an IRS Levy." (ECF No. 31-1 at 339.)

---

The Sixth Circuit has held that the prior suit pending doctrine does not apply in federal court. <u>Central Bank v. Jerrolds</u>, 2015 WL 1486368 at *6 n.7 (W.D. Tenn. March 31, 2015) (citing <u>Laney Brentwood Homes, LLC v. Town of Collierville</u>, 144 F. App'x 506, 511 (6th Cir. 2005)); <u>see also City of Newport v. Masengill Auction Co.</u>, 19 S.W.3d 789, 794 (Tenn. Ct. App. 1999).

To state a claim for negligence under Tennessee law, a plaintiff must allege: (1) a duty of care owed by the defendant to the plaintiff, (2) conduct by the defendant breaching that duty, (3) an injury or loss to the plaintiff, (4) causation in fact, and (5) proximate or legal cause. Giggers v. Memphis Hous. Auth., 277 S.W.3d 359, 364 (Tenn. 2009).

To state a claim for NIED under Tennessee law, a plaintiff must establish the essential elements of a general negligence claim and the existence of a serious or severe emotional injury that is supported by expert medical or scientific evidence. Lourcey v. Estate of Scarlett, 146 S.W.3d 48, 52 (Tenn. 2004).

To state a claim for IIED under Tennessee law, a plaintiff must allege that (1) the conduct complained of was intentional or reckless; (2) the conduct was so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of resulted in serious mental injury. Bain v. Wells, 936 S.W.2d 618 (Tenn. 1997).

Turner argues that, under 26 U.S.C. § 6332(a), it is immune from Cash's negligence, IIED, and NIED claims insofar as they relate to Cash's IRS levy. (ECF No. 33-1 at 339.)

When a taxpayer is delinquent in paying taxes, the IRS may collect the tax by issuing a levy on the taxpayer's "property

33

and rights to property." 26 U.S.C. § 6331(a). A third party "in possession of (or obligated with respect to) property or rights to property upon which a levy has been made" must surrender the property in accordance with the levy. 26 U.S.C. § 6332(a). Payment on demand of an IRS notice of levy discharges that third party from liability with respect to those funds. 26 U.S.C. § 6332(e). That immunity continues "until such levy is released." 26 U.S.C. § 6331(e), (h).

On March 13, 2017, the IRS mailed Turner a notice of levy on Cash's wages. (Amend. Compl., ECF No. 29 ¶ 49.)[6] The letter instructed Turner to "give the letter to Plaintiff immediately." (Id. ¶ 50.) Turner provided Cash the letter on April 10, 2017. (Id. ¶ 54.) The IRS levy against Cash was released on April 20, 2017. (ECF No. 29; ECF No. 31-4.) Cash represents that, before April 12, 2017, Turner took $900 from Cash's paycheck, reducing his paycheck to $400. (Amend. Compl., ECF No. 29 ¶¶ 57-58, 60.) Turner represented to Cash that it was instructed by the IRS to "only leave Plaintiff with $400 per paycheck." (Id. ¶¶ 60-61.)

To the extent Cash's claims arise from Turner's withholding his wages pursuant to the IRS levy, that argument fails to state a claim. Turner is entitled to immunity. An

---

[6] The parties do not attach the letter or describe its contents.

administrative levy was issued on Cash's earned income, and pursuant 26 U.S.C. § 6332(a), Turner received a Notice of Levy. (Amend. Compl., ECF No. 29 ¶ 49.)  Turner withheld Cash's wages under the compulsion of the levy.  (Id. ¶¶ 57-61.)  Turner is immune from suit arising from honoring the levy.

To the extent Cash's claims arise from Turner's failure to notify Cash of the levy immediately, he fails to state a claim. Turner has no legal duty to notify Cash.  It is the IRS' duty to notify Cash of the levy against him, and the IRS has the undoubted power to levy without a delinquent taxpayer's authorization.  26 U.S.C. § 6331(d).  Cash's negligence and NIED claims fail.

Turner's honoring of the levy and failure to notify Cash of the levy immediately are not so outrageous that Turner's conduct would not be tolerated by civilized society.  Cash's IIED allegations fail to state a claim.

Cash's negligence, NIED, and IIED claims relating to the IRS levy fail to state a claim.  Turner's Motion to Dismiss those claims is GRANTED.

### 3.    Fraud, Unjust Enrichment, and Conversion

Cash brings claims for fraud, unjust enrichment, and conversion based on Turner's removing $1 from Cash's paychecks

"since April 27, 2017 under the representation that it is an 'ADMFEE'" and on Turner's failure to compensate Cash for 16 hours of work, amounting to $298.88. (Amend. Compl., ECF No. 29 ¶¶ 100-101, 118, 121.)

Cash has failed to plead sufficient facts to establish that Turner made any representations about the $1 fee or the failure to compensate Cash for 16 hours of work. A plaintiff asserting a claim for fraud under Tennessee law must establish six elements:

> (1) the defendant made a representation of an existing or past fact; (2) the representation was false when made; (3) the representation was in regard to a material fact; (4) the false representation was made either knowingly or without belief in its truth or recklessly; (5) plaintiff reasonably relied upon the misrepresented fact; and (6) plaintiff suffered damage as a result of the misrepresentation.

PNC Multifamily Capital Institutional Fund v. Bluff City Community Development Corp., 387 S.W.3d 525, 548 (Tenn. Ct. App. 2012).

Cash has failed to state a plausible claim for fraud on which relief can be granted. Turner's Motion to Dismiss Cash's fraud claims is GRANTED.

Cash has failed to plead sufficient facts to establish unjust enrichment. A plaintiff asserting a claim for unjust

enrichment under Tennessee law must prove three elements: (1) a benefit conferred on the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance of such benefit under circumstances that would make it inequitable for the defendant to retain the benefit without payment. Freeman Indus., LLC v. Eastman Chem. Co., 172 S.W.3d 512, 525 (Tenn. 2005).

Cash fails to establish that it would be inequitable for Turner to retain the $1 fee. The Loan Policy sets out three fees the Plan Administrator may charge the participant's account for each loan: (1) $150 Loan set-up fee deducted from the participant's account balance; (2) monthly loan maintenance fee set at 0.70% of market value deducted from the participant's account; and; (3) annual loan maintenance fee for each calendar year the loan is outstanding. (Loan Policy, ECF No. 32-4 at 489.) Turner was permitted to charge administrative fees on Cash's outstanding loan. Turner's Motion to Dismiss that claim is GRANTED.

Cash's claim for unjust enrichment arising from his unrecouped wages is not cognizable. An unjust enrichment claim is not cognizable where there is an express contract. Durkin v. MTown Constr., LLC, No. W201701269COAR3CV, 2018 WL 1304922, at *7 (Tenn. Ct. App. Mar. 13, 2018). Cash represents that he

has an enforceable employment contract with Turner. (Amend. Compl., ECF No. 29 ¶¶ 138-40.) Cash may not bring an unjust enrichment claim arising from his employment contract. Cash has failed to state a plausible claim for unjust enrichment on which relief can be granted. Turner's Motion to Dismiss that claim is GRANTED.

Cash has failed to plead facts to establish conversion as it relates to Turner's failure to compensate Cash for 16 hours of work or Turner's removal of the $1 administrative fee from Cash's paycheck. "The elements of a conversion claim include: (1) an appropriation of another's tangible property to one's use and benefit; (2) an intentional exercise of dominion over the chattel alleged to have been converted; and (3) defiance of the true owner's rights to the chattel." White v. Empire Exp., Inc., 395 S.W.3d 696, 720 (Tenn. Ct. App. 2012). "While the Tennessee Courts do not appear to have addressed the issue, past decisions in this jurisdiction and others have found that an employer's alleged failure to pay wages promised does not constitute conversion." Bacon v. Subway Sandwiches & Salads LLC, No. 3:14-CV-192-PLR-HBG, 2015 WL 729632, at *3 (E.D. Tenn. Feb. 19, 2015) (internal quotation marks omitted) (collecting cases).

Because Cash does not have a property right in unpaid wages, his conversion allegations fail to state a claim on which relief can be granted. Turner's Motion to Dismiss that claim is GRANTED.

### 4. Fraud -- IRS Levy Letter

Cash brings a claim of fraud against Turner for "misrepresenting to [Cash] the date it received a letter from the I.R.S. regarding a levy to [Cash's] income." (ECF No. 29 ¶ 87.) Cash alleges that Turner represented to him that it received the notice letter on April 10, 2017, when it actually received it on March 13, 2017. (Id. ¶ 88.) Cash alleges that he "was injured by Defendant Turner's conduct because it placed him in a position to not be able to address the levy until after over $900 was deducted from his paycheck." (Id. ¶ 91.)

Cash has failed to plead a plausible claim for fraud based on Turner's alleged misrepresentation. Cash alleges that his monetary injury "would have been completely avoided had [Cash] received the levy information which Defendant Turner was instructed to give to [Cash] immediately." (Id. ¶ 93.) Cash fails to allege that he "suffered damage as a result of the misrepresentation" that Turner received the letter in April. Bluff City, 387 S.W.3d at 548. Cash instead claims it was the delay in receiving the letter, rather than the representation

about when Turner received the letter that caused his injuries. Cash has failed to state a plausible claim for fraud on which relief can be granted. Turner's Motion to Dismiss that claim is GRANTED. Cash's fraud claim based on Turner's alleged misrepresentation as to the IRS levy is DISMISSED.

### 5. Negligence -- Failure to Compensate

Cash argues that Turner was negligent by breaching its "duty to pay [Cash] for the hours in which he worked." (Amend. Compl, ECF No. 29 ¶¶ 153-54.)

Under Tennessee law, the duty alleged in a negligence claim must be independent of a contractual duty. Wright Bros. Constr. Co., Inc. v. State, No. M201500610COAR9CV, 2015 WL 9437288, at *9 (Tenn. Ct. App. Dec. 22, 2015); Am.'s Collectibles Network, Inc. v. Sterling Commerce (Am.), Inc., No. 3:09-CV-143, 2016 WL 9132294, at *19 (E.D. Tenn. Sept. 7, 2016).

Cash does not allege that Turner's duty to pay arises apart from any duty created by Cash's employment contract. Cash cites no binding authority, and the Court finds none, that creates a common law duty to pay wages. Cash's negligence allegations based on Turner's failure to compensate him for 16

hours of work fails to state a claim.  Turners' Motion to Dismiss that claim is GRANTED.

### D. ERISA Claims

Although Cash contends that ERISA does not apply, he argues that if it did apply, "both Defendants . . . have violated ERISA." (Amend. Compl., ECF No. 29 ¶¶ 184-85.)  Cash alleges that Country Trust and Turner breached their fiduciary duty under ERISA by denying Cash a second loan without justification; failing to provide Cash the denial in writing, an appeal or review process, or a reasonable interest rate; and treating Cash differently from other employees.  (Id. ¶¶ 186-205.)  Cash also contends that Country Trust breached its fiduciary duty under ERISA by "collect[ing] more money from Plaintiff th[a]n it was authorized or allowed to collect," and by "receiv[ing] payments from Plaintiff, but never credit[ing] them to [Plaintiff's] account. . . ."  (Id. ¶¶ 200-01.)

Although the Amended Complaint cites no specific statutory or regulatory provision, Cash does cite specific sections of ERISA in his response, contending that Defendants violated 29 U.S.C. §§ 1104, 1106, 1108, 1109, 1132, and 1133.  (ECF No. 34 at 524, 528.)[7]

---

[7] Cash also refers to § 1006.  (ECF No. 34 at 524.)  That provision does not exist.

41

Turner argues that Cash's breach of fiduciary duty claims are not cognizable because 29 U.S.C. § 1109 "allows relief only for an entire plan and not for individual participants or beneficiaries, like Plaintiff here." (ECF No. 31-1 at 345 (citing Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 139-143 (1985)).) Turner also argues that "mere failure to provide Plaintiff with an additional 401(k) loan at his request and having different information regarding the balance of Plaintiff's outstanding loan . . . do not violate any fiduciary duty owed to a plan participant under ERISA." (ECF No. 31-1 at 345-46.)

Country Trust argues that Cash fails to state a claim under ERISA because "he does not identify a Plan, he does not identify either his own or Country Trust Bank's relationship to the Plan, he does not identify which provisions of the Plan and its related documents are at issue, and he does not relate any of his allegations to any specific provision of ERISA." (ECF No. 32 at 367.) Country Trust contends that Cash "fails to identify what fiduciary duty was allegedly breached or why Country Trust Bank was subject to that duty." (Id.) Country Trust represents that it is not the 401(k) Plan administrator and thus has no "right to approve or disapprove a loan application" and no obligation to provide a written denial.

(Id. at 367-68 (quoting ECF No. 32-1 §7.11(a).)  Country Trust

also argues that Cash's allegations are insufficient to support

relief under ERISA because Cash does not allege that he

formally applied for a second loan or what unreasonable

interest rate he received.  (Id. at 368-69.)

Under 29 U.S.C. § 1132, "anyone who qualifies as a

'participant or beneficiary' of an employee benefit plan may

sue under ERISA to enforce various rights conferred by ERISA."

An ERISA plaintiff may assert a claim for wrongful denial of

benefits under § 1132(a)(1)(B) or breach of fiduciary duty

under § 1132(a)(3), but he may not assert both.  Donati v. Ford

Motor Co., Gen. Ret. Plan, Ret. Comm., 821 F.3d 667, 674 (6th

Cir. 2016).

Section 1132(a)(1)(B) authorizes a plan participant or

beneficiary to bring an action "to recover benefits due to him

under the terms of his plan, to enforce his rights under the

terms of the plan, or to clarify his rights to future benefits

under the terms of the plan[.]"  Section 1132(a)(3) is

applicable "to beneficiaries who may not avail themselves of

§ 1132's other remedies."  Wilkins v. Baptist Healthcare Sys.,

Inc., 150 F.3d 609, 615 (6th Cir. 1998).  Thus, if "§

1132(a)(1)(B) provides a remedy for [the plaintiff's] alleged

injury that allows him to bring a lawsuit to challenge the Plan

43

Administrator's denial of benefits to which he believes he is entitled, he does not have a right to a cause of action for breach of fiduciary duty pursuant to § 1132(a)(3)." Id.

A plaintiff may not assert claims for individual benefits that are not actual fiduciary-duty claims. See Wilkins, 150 F.3d at 615–16 ("Because § 1132(a)(1)(B) provides a remedy for [the plaintiff's] alleged injury that allows him to bring a lawsuit to challenge the Plan Administrator's denial of benefits to which he believes he is entitled, he does not have a right to a cause of action for breach of fiduciary duty pursuant to § 1132(a)(3). . . . To rule in [the plaintiff's] favor would allow him and other ERISA claimants to simply characterize a denial of benefits as a breach of fiduciary duty, a result which the Supreme Court expressly rejected.") (citing Varity Corp. v. Howe, 516 U.S. 489, 512, 515 (1996)). A fiduciary breach claim under § 1132(a)(3) is permissible when it "is based on an injury separate and distinct from the denial of benefits or where the remedy afforded by Congress under § [1132](a)(1)(B) is otherwise shown to be inadequate." Rochow v. Life Insurance Co. of North America, 780 F.3d 364, 372–74 (6th Cir. 2015).

Cash alleges that Defendants breached their fiduciary duty. The Amended Complaint, however, seeks to recover and

enforce benefits due to Cash under the terms of the 401(k) Plan.  It alleges that "Country Trust, by allowing Defendant Turner to deny Plaintiff a second loan, <u>operated contrary to the written agreements involving the loan</u>;" that "Defendant Country Trust <u>did not follow the written claim procedures for written denials, or review of the denials</u>, when Plaintiff was denied a second loan;" and that "Defendant Country Trust did not provide Plaintiff with a fair or reasonable interest rate" as required by the loan documents.  (Amend. Compl., ECF No. 29 ¶¶ 191-92, 196, 198 (emphasis added).)  Cash also seeks "clarification of his right to future loans from his 401(k)." (<u>Id.</u> at 328.)  Cash's fiduciary duty claims are an impermissible attempt to recharacterize individual benefits claims for which § 1132(a)(1)(B) would provide a remedy.  They are DISMISSED.

To the extent Cash has alleged claims for breach of fiduciary duty that are separate and distinct from his denial of benefits claims, those allegations also fail to state a claim.

Section 1132(a)(2) authorizes a plan participant or beneficiary to bring an action against a fiduciary who is

liable for a breach of fiduciary duty under Section 1109.[8]  If

a fiduciary duty is breached, ERISA permits plan participants

and beneficiaries to sue for equitable relief.  29 U.S.C. §

1109.  "To be actionable under § 1132(a)(2), an alleged breach

of fiduciary duty must result in a loss to the plan."  Wolf v.

Causley Trucking, Inc., 719 F. App'x 466, 476 (6th Cir. 2017)

(citing LaRue v. DeWolff, Boberg & Assocs., Inc., 552 U.S. 248

(2008)); Loren v. Blue Cross & Blue Shield of Mich., 505 F.3d

598, 608 (6th Cir. 2007) ("Plaintiffs cannot bring suit under §

1132(a)(2) to recover personal damages for misconduct, but

rather must seek recovery on behalf of the plan.").  To state a

fiduciary duty claim, plaintiffs must also state "which

specific fiduciary duty or specific right owed to them was

infringed."  Soehnlen v. Fleet Owners Ins. Fund, 844 F.3d 576,

585 (6th Cir. 2016).

The Amended Complaint does not allege the denial of a

specific right or the breach of a specific fiduciary duty.  It

does not allege that the denial of a right or the breach of a

---

[8] Under ERISA, a plan "fiduciary" is one who "exercises any
discretionary authority or discretionary control respecting the management
of [an ERISA] plan or exercises any authority or control respecting the
management or disposition of its assets" or who "has any discretionary
authority or discretionary responsibility in the administration of such
plan."  29 U.S.C. § 1002(21)(A).  For purposes of ERISA, a "fiduciary" not
only includes persons specifically named as fiduciaries by the benefit
plan, but also anyone else who exercises discretionary control or authority
over a plan's management, administration, or assets.  See Mich. Affiliated
Healthcare Sys., Inc. v. CC Sys. Corp. of Mich., 139 F.3d 546, 549 (6th
Cir. 1998).  Under ERISA, a person is a fiduciary only with respect to
those aspects of the plan over which he or she exercises authority or
control.  See Grindstaff v. Green, 133 F.3d 416, 426 (6th Cir. 1998).

duty resulted in a loss to the 401(k) Plan.  The Amended

Complaint cites no provision of ERISA.  It alleges that

"Defendant Country Trust, if considered a trustee, has breached

its fiduciary duty to Plaintiff[;]" and "Defendant Turner has

also breached a fiduciary duty to Plaintiff."  (Amend. Compl.,

ECF No. 29 ¶¶ 186-87.)  The Amended Complaint seeks individual

relief for Cash, not relief on behalf of the 401(k) Plan:

> 10. If it is determined that ERISA applies to any of
> the claims, Plaintiff requests a review as to whether
> Defendant Country Trust is an appropriate party over
> Plaintiff's 401(k).
>
> 11. Plaintiff requests that <u>he</u> be provided with all
> documents identifying the process regarding the
> review of denials of benefits, and for the Court to
> make a determination if the process is proper.
>
> 12. Plaintiff seeks a determination as to whether
> Defendant Country Trust has violated its duties based
> on the written language giving them authority to act
> as a trustee or fiduciary.
>
> 13. Plaintiff is seeking a clarification of <u>his right</u>
> to future loans from <u>his 401(k)</u>.
>
> 14. <u>Plaintiff is seeking to be reimbursed</u> for the
> money improperly withdrew [sic] and <u>taken from him</u>.
>
> 15. <u>Plaintiff is seeking clarification</u> of what
> Defendant Turner's role is according to the plan and
> written agreement, and if it violated that role.
>
> 16. To the extent Defendant Turner has violated its
> role, <u>Plaintiff is seeking reimbursement</u>.

(<u>Id.</u> at 328 (emphasis added).)  Cash has not alleged that a

specific breach of fiduciary duty injured the 401(k) Plan and

has not sought relief on behalf of the 401(k) Plan itself.

Defendants' Motions to Dismiss Cash's fiduciary claims are GRANTED. Those claims are DISMISSED.

## V.    Conclusion

For the foregoing reasons, Defendants' Motions to Dismiss are GRANTED in part and DENIED in part. All of Cash's claims are dismissed except his breach of employment contract claim against Turner for failure to compensate Cash for 16 hours of work.

So ordered this 10th day of July, 2018.

_/s/ Samuel H. Mays, Jr._
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE